1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11    JAMIEN WASHINGTON,                      Case No. 1:18-cv-00513-DAD-JLT (PC)

12                    Plaintiff,              **FINDINGS AND RECOMMENDATIONS
                                              TO DENY PLAINTIFF'S MOTION FOR
13            v.                              CHALLENGING EXHAUSTION OF
                                              ADMINISTRATIVE REMEDIES; GRANT
14    M. SEXTON, et al.,                      DEFENDANTS' MOTION FOR
                                              SUMMARY JUDGMENT RE
15                    Defendants.             EXHAUSTION; AND DISMISS THE CASE
                                              WITHOUT PREJUDICE**

16
                                              (Docs. 62, 64)
17
                                              **14-DAY DEADLINE**
18

19           In its first screening order, the Court found that Plaintiff stated cognizable claims: (1)

20    First Amendment retaliation claim against Defendant Vera, (2) an Eighth Amendment excessive

21    force claim against Vera, (3) an Eighth Amendment failure-to-protect claim against John Doe 1,

22    and (4) an Eighth Amendment medical indifference claim against Defendants Vera, Tinero, and

23    John Doe 1. (Docs. 16, 23.) The Court found the remaining claims non-cognizable as pleaded.

24    *Id.* Plaintiff elected to proceed only on the cognizable claims rather than filing an amended

25    complaint. (Doc. 17.)

26           After Defendants sought an extension of time to file an exhaustion motion, (*see* Doc. 58),

27    Plaintiff filed a Motion for Challenging Exhaustion of Administrative Remedies. (Doc. 62.)

28    Under the liberal construction afforded to prisoner pleadings on summary judgment, the Court

1    construes this as Plaintiff's motion for summary judgment, even though it fails to comply strictly

2    with summary judgment rules. *See Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018).

3    Defendants filed a cross-motion for summary judgment on the issue of exhaustion and an

4    opposition to Plaintiff's motion. (Docs. 64, 66.) Plaintiff filed a response, to which Defendants

5    filed a reply. (Docs. 67, 69.)

6    The facts regarding exhaustion are not in dispute. For the reasons set forth below, the

7    undersigned recommends that the Court DENY Plaintiff's motion for summary judgment and

8    GRANT Defendants' motion for summary judgment.

9    **I.      LEGAL STANDARDS**

10   **A.  Summary Judgment**

11   Summary judgment is appropriate when the moving party "shows that there is no genuine

12   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13   Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine issue

14   of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party may

15   accomplish this by presenting evidence that negates an essential element of the non-moving

16   party's case. *Id.* Alternatively, the movant can demonstrate that the non-moving party cannot

17   produce evidence to support an essential element of his claim that must be proven at trial.  *Id.*;

18   Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the

19   non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at

20   322–23.

21   If the moving party meets this initial showing, the burden shifts to the non-moving party

22   to establish "specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,

23   477 U.S. 242, 250 (1986). The non-moving party cannot simply rely on the pleadings and

24   conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990);

25   *see also Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational

26   trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec.*

27   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when deciding a motion

28   for summary judgment, the court must view any inferences drawn from the underlying facts in a

light most favorable to the non-moving party. *Id.*

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto*, 882 F.3d at 872 (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory, and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The PLRA requires "proper exhaustion," which means that "the prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93. The rules that must be followed, in other words, "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system . . . , but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* The

1    exhaustion requirement allows prison officials to have an opportunity to resolve disputes before

2    the filing of a court action against them. *Jones*, 549 U.S. at 204.

3         The failure to exhaust administrative remedies is an affirmative defense that the

4    defendant must plead and prove. *Id.* at 204, 216. The defendant bears the burden of producing

5    evidence that proves a failure to exhaust; summary judgment is appropriate only if the

6    undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed

7    to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary

8    judgment, the defendant bears the initial burden of proving (1) the existence of an available

9    administrative remedy, and (2) the plaintiff failed to exhaust that remedy. *Id.* at 1172. If the

10   defendant makes this showing, the burden shifts to the prisoner to present evidence showing

11   "that there is something in his particular case that made the existing and generally available

12   administrative remedies effectively unavailable to him." *Id.* (citation omitted). A prisoner may

13   not file a complaint raising non-exhausted claims. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th

14   Cir. 2010).

15        The ultimate burden of proof, however, remains with the defendant. *Albino*, 747 F.3d at

16   1172. "If a motion for summary judgment is denied, disputed factual questions relevant to

17   exhaustion should be decided by the judge." *Id.* at 1170. If the court finds that remedies were not

18   available, the prisoner exhausted available remedies, or the failure to exhaust available remedies

19   should be excused, the case proceeds to the merits. *Id.* at 1131.

20        **C.  CDCR Grievance Process**

21        Plaintiff does not dispute that Defendants have met their initial burden of showing that an

22   available administrative remedy exists. The CDCR has an administrative grievance system for

23   prisoners to appeal a policy, decision, action, condition, or omission by the department or staff

24   having an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, §

25   3084.1(a) (2017). [1] Compliance with 42 U.S.C. § 1997e(a) requires California state prisoners to

26   utilize CDCR's grievance process to exhaust their claims prior to filing a lawsuit in court. *See*

27

28   [1] Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486. For purposes of
these Findings and Recommendations, all citations refer to the version of the regulations effective at times relevant to
Plaintiff's claims.

4

*Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 8586.

In 2017 and 2018, the years relevant to Plaintiff's claims, California regulations required that inmates pursue administrative grievances through three levels of review in order to exhaust their administrative remedies. Cal. Code Regs. tit. 15, §§ 3084.1(b) (2017), 3084.7(d)(3) (2017) (repealed June 1, 2020).  In order to exhaust properly, the prisoner must submit to the appeals coordinator a CDCR form 602, inmate appeal, describing the specific issue under appeal and the relief requested, and supporting documents. Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.3. The first appeal is screened for routine processing. *Id.* §§ 3084.4(b)(1). Appeals alleging staff misconduct constitute an exception to the regular appeal process. *Id.* § 3084.9(i). If an appeal is accepted as a staff complaint, the first level of review is bypassed. *Id.* § 3084.7(a)(3). If the prisoner is dissatisfied with the departmental response, then he may seek a second level of administrative review. *Id.* § 3084.7(b). If the matter is not resolved at the second level, then he may seek a third level of review. *Id.* § 3084.7(c). "The third level of review exhausts administrative remedies." *Id.* § 3084.7(d)(3).

## II. UNDISPUTED FACTS REGARDING EXHAUSTION

Plaintiff's claims arose during his incarceration at California State Prison in Corcoran, California. On or about March 28, 2017, Plaintiff submitted an inmate appeal, assigned log number CSPC-3-17-01699 ("appeal"), alleging, *inter alia*, the following:

On March 22, 2017, Vera "used unnecessary and unreasonable excessive force, that went unreported, and was disproportionate to the incident" involving an argument with another inmate, Penton. (Doc. 64-5 at 7, 9.) While Penton was released to his cell, Plaintiff was handcuffed and moved to a cell shower. *Id.* Plaintiff alleges that Vera "slammed [him] into the metal ironing board box . . . and then slammed [him] onto the concrete floor," causing him injury to his lower lip, cheek, left arm, and shoulder. *Id.* He went to medical the next day to have his injuries documented. *Id.* Plaintiff named five other inmates as witnesses. *Id.*

On April 16, 2017, the CDCR issued to Plaintiff a letter partially granting his appeal but finding that staff did not violate CDCR policy. (Doc. 64-5 at 14.) Plaintiff's appeal was sent for the second level review.

1    On May 11, 2017, Plaintiff received letter indicating that that there was an "exceptional

2    delay in review of appeal" due to "[c]omplexity of the decision, action, or policy," and

3    estimating a new completion date. (Doc. 64-5 at 18.) This was the first of ten such letters ("delay

4    letters"). *Id.* at 18–27. The last letter preceding the lawsuit, dated March 22, 2018, provided a

5    new completion date of May 3, 2018. *Id.* at 27. Plaintiff filed his civil rights complaint

6    commencing this action on April 13, 2018. (Doc. 1.)

7            On May 3, 2018, CDCR sent Plaintiff another letter indicating an "exceptional delay in

8    review of appeal" due to "[c]omplexity of the decision, action, or policy," and setting a new

9    estimated completion date of June 14, 2018. (Doc. 64-5 at 27.)  On May 31, 2018, CDCR issued

10   a second level decision again partially granting Plaintiff's appeal but finding that staff did not

11   violate CDCR policy. *Id.* at 11–12.

12   **III.    DISCUSSION**

13           In their motion for summary judgment, Defendants argue that Plaintiff failed to exhaust

14   administrative remedies available to him before filing his lawsuit. (Doc. 64-2 at 8, 9.) In

15   particular, Defendants contend that when Plaintiff filed the instant action, the second level

16   decision had not been issued on Plaintiff's single appeal complaining about excessive force by

17   Vera. Therefore, this action was filed prematurely and is foreclosed in its entirety by the

18   exhaustion requirement. *See id.* Additionally, Defendants argue that the appeal was limited by

19   claiming only an excessive force violation and no medical indifference violation, and only by

20   Vera and no other officer. *See id.* at 9–10.

21           In his pleadings, Plaintiff does not dispute that the CDCR provided an administrative

22   remedy, he received each of the delay letters prior to filing suit, and that he filed suit prior to

23   completion of second level review. (Doc. 67 at 2.) Plaintiff argues, however, that the nine-month

24   delay demonstrated "[deliberate] indifference" to Plaintiff's grievance; a "concerted effort to

25   needlessly delay rendering a decision" in violation of his due process rights; and an attempt to

26   thwart his appeal rights. (Doc. 62 at 2; Doc. 67 at 3–4, 6–7, 10.) Plaintiff complains that prison

27   officials violated their own rules by failing to comply with time limits. Plaintiff treated this delay

28   as a denial and asserts that he was concerned that the delays would cause a civil action to be

6

time-barred. (Doc. 67 at 10.)

**A. Filing of Lawsuit Before Second Level Decision**

In determining whether administrative remedies were properly exhausted, the court must consider the particular circumstances of the prisoner's case. *Fuqua v. Ryan*, 890 F.3d 838, 850 (9th Cir. 2018) (citing *Albino*, 747 F.3d at 1172). The evidence establishes the following sequence of events in this case: Plaintiff lodged his 602 appeal on March 28, 2017. (Doc. 64-5 at 7, 9.) On April 16, 2017, CDCR officials issued a letter advising Plaintiff that his first level appeal inquiry was completed and finding that staff did not violate CDCR policy. *Id.* at 13–14.

While his second level review was pending, on May 11, 2017, Plaintiff received the first of ten letters advising him of "exceptional delay in review of appeal" due to "complexity of the decision, action, or policy." (Doc. 64-5 at 18.)

On April 13, 2018, Plaintiff filed this civil rights lawsuit. (Doc. 1.)

On May 3, 2018, Plaintiff received another letter indicating "exceptional delay in review of appeal" at the second level due to "complexity of the decision, action, or policy," (Doc. 64-5 at 27.) The CDCR completed its second level review and notified Plaintiff by letter dated May 31, 2018. *Id.* at 11. Plaintiff did not pursue a third level review despite being advised: "If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review . . . Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted." *Id.* at 12.

Given these undisputed facts and evidence submitted by the parties, the Court finds that Defendants have met their initial burden by proving the existence of administrative remedies and Plaintiff's failure to exhaust his administrative remedies. Therefore, the burden shifts to Plaintiff to present evidence showing "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. An inmate must exhaust available remedies but is not required to exhaust *unavailable* remedies. *Id.* at 1171 (emphasis added). "To be available, a remedy must be available 'as a practical matter.'" *Id.* (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use'

7

1 to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016)

2 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

3       In *Ross*, the United States Supreme Court held that three kinds of circumstances render

4 the administrative remedy unavailable: (1) the "administrative procedure . . . operates as a simple

5 dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

6 inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking,

7 incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3)

8 "prison administrators thwart inmates from taking advantage of a grievance process through

9 machination, misrepresentation, or intimidation." *Id.* at 1859–60 (quoting *Booth*, 532 U.S. at

10 738).

11       Plaintiff argues that he was not given an opportunity to exhaust the administrative

12 appeals process because Defendants needlessly delayed rendering a decision to thwart his appeal

13 rights. (Doc. 62 at 2; Doc. 67 at 6.) A delay in processing a grievance does not render the appeal

14 process per se unavailable; "[r]ather, the court must examine whether, in light of the delay, any

15 meaningful process was still available." *Fordley v. Lizarraga*, 2018 WL 6199012, at *6 (E.D.

16 Cal. Nov. 28, 2018).

17       Plaintiff complains the prison officials did not give him an explanation for the delays and

18 that, in his view, no action was being taken to resolve the issue. Contrary to this assertion,

19 however, the letters clearly notified Plaintiff that a delay in the review of the appeal was due to

20 "[c]omplexity of the decision, action, or policy," and they provided him a new estimated

21 completion date each time. (*See* Doc. 64-5 at 18–27.) As Defendants observe, this was all that

22 the California Code of Regulations section 3084.8(d) and (e) required. Cal. Code Regs. Tit. 15 §

23 3084.8(d), (e). Plaintiff admits to receiving the delay letters prior to filing suit. (*See* Doc. 62 at

24 2.)

25       More significantly, the evidence shows that some avenue for administrative relief

26 remained open to Plaintiff despite the delay. *See Fordley*, 2018 WL 6199012, at *6 (following

27 *Womack v. Bakewell*, 2010 WL 3521926, at *10–14 (E.D. Cal. Sept. 8, 2010)). The CDCR

28 issued a second level review decision on May 31, 2018. (Doc. 64-5 at 11–12.) Had Plaintiff

1   continued to wait another six weeks for this decision, he could have proceeded to third level

2   review and properly exhausted his remedies. Exhaustion must occur prior to filing suit; a

3   plaintiff may not exhaust while the suit is pending, as the Plaintiff did here. *See McKinney v.*

4   *Carey,* 311 F.3d 1198, 1199–1201 (9th Cir. 2002).

5          Plaintiff's belief that his federal suit would be time-barred because of continued delays is

6   unavailing. The statute of limitations, without considering any applicable tolling, is two years but

7   he chose to file this action after only about one year. See *Brown*, 422 F.3d at 943 [The statute of

8   limitations is tolled while a prisoner exhausts the grievance process.] There is no indication the

9   plaintiff was under any imperative to start the litigation or where the plaintiff's case would suffer

10  if it was delayed further. While the prison officials' response was irritating to the plaintiff, a

11  sincere desire to have the matter resolved does not justify determining that the remedy was

12  unavailable. "[I]f there is a process available, it must be utilized, regardless of how tiresome or

13  trying." *Ellis v. Cambra*, 2005 WL 2105039, at *5 (E.D.Cal. 2005).

14         Plaintiff has failed to meet his burden to show that "there is something in his particular

15  case that made the existing and generally available administrative remedies effectively

16  unavailable to him." *See Albino*, 747 F.3d at 1166. Despite the delays, the CDCR remedy was

17  "capable of use" to "obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1858.

18  Thus, the Court does not find that it should take a year to conduct an investigation of the sort

19  needed for this case, and it does not find that delays of a year or longer should routinely occur, it

20  *does find* that under the facts of this case and the particular circumstances of this case, the

21  administrative remedy was not yet unavailable to him. Therefore, Defendants have proven their

22  affirmative defense that Plaintiff failed to exhaust administrative procedures available to him

23  before filing this lawsuit. Accordingly, summary judgment in Defendants' favor is appropriate

24  on the issue of exhaustion, and the Court must dismiss Plaintiff's complaint without prejudice.

25  *See McKinney v. Carey,* 311 F.3d at 1200–01 (9th Cir. 2002).

26         **B.  Medical Indifference**

27         Defendants next argue that Plaintiff's medical indifference claim fails because nowhere

28  in the appeal does Plaintiff claim that he requested to be taken for medical care and that Vera

refused to do so. (Doc. 64-2 at 10.) Instead, the next day, Plaintiff went to medical on his own "to seek triage and treatment of the injuries sustained the night before" and to obtain documentation of his injuries. (Doc. 1 at 10; Doc. 64-5 at 9.)

When a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Upon review of the appeal, the Court finds that the grievance lacks the necessary allegations to state a claim of medical indifference by Vero or any other prison official to put them on notice of the claim. Thus, Plaintiff failed to exhaust his medical indifference claim, and summary judgment in Defendants' favor is appropriate on this Eighth Amendment claim.

### C. Defendant Tenorio and Defendant Guillen

Defendants seek the dismissal of any claims against Defendants Tenorio and Guillen because they are not named in the appeal at all. At best, the decisions at the first and second level of review indicate that Tenorio and Guillen were questioned as witnesses. (Doc. 64-5 at 12, 14). The Court finds that this evidence is insufficient to establish, as Plaintiff alleges without competent evidence, that they were Vero's "two co-conspirators Guillen and Tenorio involved in the cover-up as well." (Doc. 67 at 6.) In his Complaint, Plaintiff generally references "the sudden and brutal attack by Defendants Vera, Tenorio or John Doe #1." (Doc. 1 at 9–10.) However, Plaintiff's Statement of Facts describes an attack by Vera and no other individuals. *See id.* at 8.

The Court finds that, although Tenorio and Guillen were questioned at witnesses as part of the appeal, they were not named in the appeal to put them on notice that a grievance had been asserted against them. *See Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016). The Court previously screened out the claims against Defendant Guillen. (Docs. 16, 23.) The Court should also grant summary judgment in Defendants' favor and dismiss Tenorio as a defendant.

### IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

1. The settlement conference set on May 24, 2021 is **VACATED**;

1         Also, because the Court finds that Plaintiff has failed to exhaust his administrative

2 remedies, it **RECOMMENDS**:

3       1.  Plaintiff's Motion for Challenging Exhaustion of Administrative Remedies (Doc. 62)

4          be **DENIED**;

5       2.  Defendant's Motion for Summary Judgment (Doc. 64), be **GRANTED**.

6         These findings and recommendations are submitted to the United States District Judge

7 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen days**

8 after being served with these findings and recommendations, any party may file written

9 objections with the court and serve a copy on all parties. Such a document should be captioned

10 "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

11 objections shall be filed and served within fourteen days after service of the objections. The

12 parties are advised that failure to file objections within the specified time may waive the right to

13 appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

14

  IT IS SO ORDERED.

15

16     Dated:   __**May 4, 2021**__          _____ **/s/ Jennifer L. Thurston**
                                 CHIEF UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28